IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| CHRISTOPHER CLAYTON RICE,   )<br>   )<br>   Plaintiff,   )<br>   )<br>v.   )<br>   )<br>CITY OF HAMPTON, *et al.*,   )<br>   )<br>   Defendants.   ) | Civil Action No.: 4:24-cv-3 |

**REPLY BRIEF IN SUPPORT OF DEFENDANT, BRYAN WILSON'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendant, Bryan Wilson ("Officer Wilson"), by counsel, submits this Reply Brief in Support of its Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) (ECF No. 5) and sets forth the following in support of his Motion. For the reasons stated in this reply brief, Plaintiff has not cited any clearly established law, and, in fact, none exists, that holds that Officer Wilson's actions in this matter constitute as an excessive use of force.

    **A.**    **Plaintiff has Still Not Cited any Clearly Established Law that Provides that Officer Wilson's Drawing of his Firearm was an Excessive Use of Force.**

Plaintiff cites the 9th Circuit case of *Deorle v. Rutherford,* 272 F.3d 1272 (9th Cir. 2001) for the proposition that mental health should be considered as part of the *Graham*[1] factors analysis of use of force. Plaintiff's Brief in Opposition to Defendant Bryan Wilson's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 23 ("Opposition Brief"), pp. 6, 8,14. However, *Deorle* is not clearly established law in the 4th Circuit.

---

[1] *Graham v. Connor*, 104 L.Ed.2d 443 (1989)

The 4th Circuit case of *Estate of Armstrong v. Village of Pinehurst,* 810 F.3d 892 (4th Cir. 2016) is clearly established law in the 4th Circuit and does stand for the principle that a person's mental health must be weighed by officers, but this Court has made clear that *Armstrong* "applies only to officers 'who encounter an unarmed and minimally threatening individual.'" *Simpson v. Commonwealth,* 2016 WL 5390403 *2 (E.D. Va. 2016) (unreported) (quoting *Armstrong* 810 F.3d at 900). Similarly, the 4th Circuit, in the recent case of *Craven v. Novelli,* 2024 WL 1952590 (4th Cir. 2024) (unreported), clarified that the fact that a subject is suffering from a mental health crisis "does not rule out the threat to the Officers." *Id.* at *9. In the case at hand, Plaintiff was wielding a deadly weapon when encountered by Officer Wilson, one which he ultimately used against another officer.

 In *Kisela v. Hughes,* 584 U.S. 100 (2018), the United States Supreme Court struck down even the 9th Circuit's reliance *Deorle* to deny qualified immunity in a case with different facts. *Id.* at 106-107. In *Kisela,* the Supreme Court examined a case where an officer shot a suspect with a large knife within striking distance of another individual and found the facts distinguishable from *Deorle,* where police shot an unarmed man. *Id.* In *Kisela,* the Supreme Court reminded the 9th Circuit that "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* at 104-105 (quoting *Mullenix v. Luna,* 577 U.S. 7, 12 (2015)). As the 9th Circuit did in *Kisela,* Plaintiff has not cited any case that constitutes clearly established law that it was excessive force for Officer Wilson to draw his firearm on the Plaintiff under the circumstances described in the Complaint (ECF No. 1).

B. **Plaintiff has Still Not Cited any Clearly Established Law that Provides that Officer Wilson's Shooting of Plaintiff was an Excessive Use of Force.**

Plaintiff cites *Cooper v. Sheehan,* 735 F.3d 153 (4th Cir. 2013) for the principle that holding a deadly weapon does not automatically give officers "unfettered authority to shoot a member of the public." Opposition Brief, pp. 6, 10, 14. Plaintiff's argument in this regard asks this Court to ignore the fact that immediately prior to Officer Wilson firing his firearm, Plaintiff had hit another officer with the baseball bat he was holding. In *Craven,* the 4th Circuit discussed how the facts of *Cooper* and other similar cases were distinguishable from the case they were examining. *Craven* at *9-*11. Although not a reported case, the 4th Circuit's examination of the *Cooper* case is instructive here. The Court reiterates the following facts about *Cooper,* "the officers did not identify themselves to Cooper . . . '[w]hen the Officers fired on Cooper, he stood at the threshold of his home, holding the shotgun in one hand, with its muzzle pointed at the ground. He made no sudden moves. He made no threats. He ignored no commands. The Officers had no other information suggesting that Cooper might harm them.'" *Craven* at *9-*10 (quoting *Cooper,* 735 at 159). *Craven* was distinguishable where officers identified themselves to Mr. Craven, gave commands, but Mr. Craven dropped his arms to his waist and continued to advance on officers. *Craven* at *10. In *Craven,* the 4th Circuit reminds that the "law makes 'allowance[s] for the fact that police officers are often forced to make split-second judgements – in circumstances that are tense, uncertain, and rapidly evolving.'" Id. at *11 (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)).

Here, Plaintiff not only did not comply with officer commands, but actually used his deadly weapon on one of the responding officers, Sgt. Novak. The Plaintiffs reliance on *Cooper* in this matter is misplaced.

Plaintiff also indicates that qualified immunity should be denied because Officer Wilson failed to warn Plaintiff prior to shooting him. However, the Complaint makes clear the extent to which Officer Wilson and other officers attempted to communicate with Plaintiff prior to Plaintiff's use of deadly force against Sgt. Novak. "[W]hen the backup officers arrived and attempted to communicate with Plaintiff, he put the bat down to smoke a cigarette." Complaint, ¶ 14. "Defendant Wilson further advised that Plaintiff was still carrying the baseball bat and not listening to commands." Complaint, ¶ 15. "Plaintiff would not respond to officers' attempts to communicate with him and began walking around the building." Complaint, ¶ 17. "Defendant Wilson requested a supervisor respond to the scene because Plaintiff was not responsive to his orders." Complaint, ¶ 19. "Upon arriving on the scene, the sergeant attempted to speak with Plaintiff." Complaint, ¶ 21. "[A]s the sergeant began speaking to and approaching Plaintiff, Plaintiff raised the bat and rested it on his right shoulder." Complaint, ¶ 22. In *Knibbs v. Momphard,* 30 F.4th 200 (4th Cir. 2022), the 4th Circuit reiterated that,

> once the officer issued a verbal command, the character of the situation transformed. If an officer directs a suspect to stop, to show his hands or the like, the suspect's *continued movement* will likely raise in the officer's mind objectively grave and serious suspicions about the suspect's intentions. Even when those intentions turn out to be harmless . . . the officer can reasonably expect the worst at the split-second when he acts.

*Id.* at 220-221 (quoting *Hensley ex rel. North Carolina v. Price,* 876 F.3d 573, 585 (4th Cir. 2017)) [Emphasis in Original]. In this case, Officers had been in communication and been giving commands to Plaintiff for quite some time *before* he used deadly force against Sgt. Novak. Further warning or commands at this time are not required by law. The 4th Circuit has made clear that "[a] warning is not feasible if 'the hesitation involved in giving a warning could readily cause such a warning to be [the officer's] last.'" *Hensley on behalf of North Carolina v. Price,* 876 F.3d 573, 584 (2017) (quoting *McLenagan v. Karnes,* 27 F.3d 1002, 1007 (4th Cir. 1994)) [Alteration in

Original]. While here, there is no reason to suspect based on the Complaint that a warning in this situation could have been Officer Wilson's last; hesitation on Officer Wilson's part clearly could have resulted in further harm to Sgt. Novak. Sgt. Novak had just been hit with a deadly weapon, with no indication that the threat to her had ceased.

In summary, Plaintiff has still not cited any caselaw indicating that it was unreasonable for Officer Wilson to fire on Plaintiff under the circumstances described in the Complaint.

### C. Plaintiff's Complaint does not Claim that Officer Wilson's Handcuffing of Plaintiff was an Excessive use of Force.

Plaintiff alleges for the first time in its Brief in Opposition, that Officer Wilson's handcuffing of Plaintiff was an excessive use of force. Opposition Brief, pp. 7, 12-13. While Defendant objects to this argument being made outside of the Complaint, assuming *arguendo* that the Court considers it, Plaintiff has not cited a single case of clearly established law that would permit the use of handcuffs against a subject who had exhibited deadly force towards a police officer. Even though Plaintiff had been shot, there was no indication that he could not have possessed an additional deadly weapon on his person at the time he was secured.

### CONCLUSION

Based on the foregoing arguments, Defendant, Bryan Wilson respectfully requests that this Court grant Defendant, Bryan Wilson's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss this matter against Officer Wilson, with prejudice, and award attorney's fees and any other relief to Officer Wilson as may be deemed appropriate by this Court.

Respectfully submitted,

**BRYAN WILSON**

/s/  Brandi A. Law
Brandi A. Law (VSB No. 76961)
Sr. Deputy City Attorney
City of Hampton
Office of the City Attorney
22 Lincoln Street, 8th Floor
Hampton, Virginia  23669
Telephone: (757) 727-6127
Facsimile: (757) 727-6788
Electronic Mail: brandi.law@hampton.gov
*Counsel for Defendant, Bryan Wilson*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2024, I will electronically file the foregoing Reply Brief in Support of Defendant, Bryan Wilson's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) with the Clerk of Court using the CM/ECF system, which will then send a Notification of Electronic Filing (NEF) to the following:

Andrew A. Protogyrou, Esq.
Asha S. Pandya, Esq.
PROTOGYROU LAW, PLC
125 St. Paul's Boulevard, Suite 150
Norfolk, Virginia  23510
protogyrou@prlaw.org
*Counsel for Plaintiff, Christopher Clayton Rice*

Mario A. Pacella, Esq.
Matthew B. Robins, Esq.
Bakari T. Sellers, Esq.
Amy E. Willbanks, Esq.
STROM LAW FIRM, LLC
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
mpacella@stromlaw.com
mrobins@stromlaw.com
bsellers@stromlaw.com
awillbanks@stromlaw.com
*Pro Hac Vice*
*Counsel for Plaintiff, Christopher Clayton Rice*

/s/  Brandi A. Law
Brandi A. Law (VSB No. 76961)
Sr. Deputy City Attorney
City of Hampton
Office of the City Attorney
22 Lincoln Street, 8th Floor
Hampton, Virginia  23669
Telephone: (757) 727-6127
Facsimile: (757) 727-6788
Electronic Mail: brandi.law@hampton.gov
*Counsel for Defendant, Bryan Wilson*